**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, *et al.*<br><br>      *Plaintiffs*,<br><br>      v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*<br><br>      *Defendants*. | Case No. 8:25-cv-03777 |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

I.     USCIS Had Consistently Adopted Rules Allowing Nongovernmental, Nonpartisan Groups to Provide Voter Registration Assistance to New Citizens ..............................2

II.    For Years, the League of Women Voters Successfully Conducted Voter Registration at Administrative Naturalization Ceremonies Across the Country, Registering Tens of Thousands of New Citizens ...................................................................................................3

III.   USCIS Abruptly Bans All Nongovernmental Organizations From Providing Voter Registration and Civic Education And Provides No Factual Support For Its Asserted Justifications In Doing So ..................................................................................................5

IV.    Impact of the Voter Registration Ban on Plaintiffs .......................................................6

LEGAL STANDARD .............................................................................................................7

ARGUMENT ........................................................................................................................8

I.     Plaintiffs Are Likely to Succeed on the Merits .............................................................8

       A.  Plaintiffs Have Standing to Challenge the Voter Registration Ban.........................8

       B.  The Ban Violates the Administrative Procedure Act .................................................9

           1.  The Ban is Judicially Reviewable Because it is Final Agency Action ..............9

           2.  The Ban Is a Legislative Rule That Required Notice and Comment Rulemaking..................................................................................................10

           3.  The Ban Violates the APA's Prohibition on Arbitrary and Capricious Action.11

               a.  The Cited Executive Orders Neither Require, Support, Nor Justify the Voter Registration Ban..............................................................................13

               b.  The Factual Justifications Asserted for the Voter Registration Ban are False, Unsupported, and Illogical ............................................................14

           4.  The Ban Violates the APA Because it is Contrary to Plaintiffs' Constitutional Rights ...............................................................................................19

       C.  The Voter Registration Ban Violates Plaintiffs' First Amendment Speech and Association Rights Cannot Survive Any Level of Scrutiny..................................19

           1.  The Ban Unlawfully Burdens Plaintiffs' First Amendment-Protected Speech and Association ...............................................................................19

        2.    The Ban is Subject to Strict Scrutiny ...............................................................21

        3.    The Ban Cannot Survive Strict Scrutiny .........................................................24

        4.    The Ban Cannot Survive Any Level of Scrutiny ............................................25

II.      Without a Preliminary Injunction or Stay, Plaintiffs Will Suffer Irreparable Harm ....27

III.     The Balance of the Equities and Public Interest Favor Enjoining And Staying the Effective Date of the Voter Registration Ban .................................................................30

IV.     No Bond is Necessary .......................................................................................................30

CONCLUSION .........................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Pages**

*Action NC v. Strach*, 216 F. Supp. 3d 597 (M.D.N.C. 2016) ........................................................28

*AFL-CIO v. Federal Labor Relations Authority*, 25 F.4th 1 (D.C. Cir. 2022) ...............................12

*Air Evac EMS, Inc. v. McVey*, 37 F.4th 89 (4th Cir. 2022)............................................................27

*American Federation of State, County & Municipal Employees, AFL-CIO v. Social Security
    Administration*, No. 25-1411, 2025 WL 1249608 (4th Cir. Apr. 30, 2025) ...........................14

*American Federation of Teachers v. Bessent*, 765 F. Supp. 3d 482 (D. Md. 2025).......................30

*American Federation of Teachers v. Department of Education*,
    779 F. Supp. 3d 584 (D. Md. 2025) .......................................................................................11

*American Federation of Teachers v. Department of Education*,
    796 F. Supp. 3d 66 (D. Md. 2025) ....................................................................................10, 12

*Animal Legal Defense Fund, Inc. v. Perdue*, 872 F.3d 602 (D.C. Cir. 2017)................................15

*Asylum Seeker Advocacy Project v. United States Citizenship & Immigration Services*,
    No. CV SAG-25-03299, 2025 WL 3029552 (D. Md. Oct. 30, 2025)......................................7

*Bennett v. Spear*, 520 U.S. 154 (1997) ......................................................................................9, 10

*Biden v. Texas*, 597 U.S. 785 (2022) ............................................................................................10

*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000)...................................................................22

*Brooklyn Branch of the NAACP v. Kosinski*, 657 F. Supp. 3d 504 (S.D.N.Y. 2023)....................23

*Brown v. Holder*, 763 F.3d 1141 (9th Cir. 2014)..........................................................................11

*Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999).............20, 21, 25

*CASA de Maryland v. U.S. Department of Homeland Security*, 924 F.3d 684 (4th Cir. 2019)......12

*Central Radio Company Inc. v. City of Norfolk*, 811 F.3d 625 (4th Cir. 2016) ............................24

*Chen Zhou Chai v. Carroll*, 48 F.3d 1331 (4th Cir. 1995) ...........................................................10

*Children's Hospital of the King's Daughters, Inc. v. Azar*, 896 F.3d 615 (4th Cir. 2018)..............10

*Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010)........................................22

*Climate United Fund v. Citibank, N.A.*, 154 F.4th 809 (D.C. Cir. 2025) .......................................16

*Cooksey v. Futrell*, 721 F.3d 226 (4th Cir. 2013) ..........................................................................9

*Democracy North Carolina v. North Carolina State Board of Elections*,
476 F. Supp. 3d 158 (M.D.N.C. 2020) ...............................................................20

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) .........................................12

*Federal Communications Commission v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).....13

*Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) .........9

*Frazier v. Prince George's County*, 86 F.4th 537 (4th Cir. 2023)......................................7

*Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019) .............................................22, 24

*In re Murphy-Brown LLC*, 907 F.3d 788 (4th Cir. 2018)...............................................28

*Johnson v. Bergland*, 586 F.2d 993 (4th Cir. 1978) .....................................................28

*Lamb's Chapel v. Center Moriches Union Free School District*, 508 U.S. 384 (1993)................25

*Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012) ............................................................28

*Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021).....28

*League of Women Voters of Florida v. Browning*, 863 F. Supp. 2d 1155 (N.D. Fla. 2012).....21, 22

*League of Women Voters of Florida v. Cobb*, 447 F. Supp. 2d 1314 (S.D. Fla. 2006)...................20

*League of Women Voters of United States. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) .......................28

*League of Women Voters v. Hargett*, 400 F. Supp. 3d 706 (M.D. Tenn. 2019) .............................20

*Maryland v. United States Department of Agriculture*, 151 F.4th 197 (4th Cir. 2025)...................8

*Maryland Department of Human Resources v. United States Department of Agriculture*,
976 F.2d 1462 (4th Cir. 1992)..............................................................................30

*McCullen v. Coakley*, 573 U.S. 464 (2014) ................................................................23

*Meyer v. Grant*, 486 U.S. 414 (1988) .............................................................20, 21, 22

*Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983)..................................................................... 15, 19

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*,
915 F.3d 197 (4th Cir. 2019)..............................................................................27

*Multimedia Publishing Company of South Carolina, Inc. v. Greenville-Spartanburg Airport District*, 991 F.2d 154, 162 (4th Cir. 1993)........................................................26, 27

*National Association of Diversity Officers in Higher Education v. Trump*,
767 F. Supp. 3d 243 (D. Md. 2025) .....................................................................27

*National Federation of the Blind v. United States Department of Education*,
   407 F. Supp. 3d 524 (D. Md. 2019) ..................................................................................9

*National Institute of Family and Life Advocates v. Becerra*, 585 U.S. 755 (2018) .......................23

*Nken v. Holder*, 556 U.S. 418 (2009)..................................................................................................7

*People for Ethical Treatment of Animals, Inc. v. Shore Transit*,
   580 F. Supp. 3d 183 (D. Md. 2022) ..........................................................................23, 25

*Perez v. Mortgage Bankers Association*, 575 U.S. 92 (2015).........................................................10

*Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983)...........25

*Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009) ........................................................25

*Project Vote v. Blackwell*, 455 F. Supp. 2d 694 (N.D. Ohio 2006) ...............................................20

*Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819 (1995) .....................22

*Safe Extensions, Inc. v. Federal Aviation Administration*, 509 F.3d 593 (D.C. Cir. 2007)............15

*Sierra Club v. U.S. Department of the Interior*, 899 F.3d 260 (4th Cir. 2018) ..............................12

*Tennessee State Conference of N.A.A.C.P. v. Hargett*,
   420 F. Supp. 3d 683 (M.D. Tenn. 2019) ..............................................................20, 21

*Turner Broadcasting System, Inc. v. Federal Communications Commission*,
   512 U.S. 622 (1994)...................................................................................................23

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) ..................................24

*VoteAmerica v. Schwab*, 576 F. Supp. 3d 862 (D. Kan. 2021) ......................................................21

**Statutes, Codes, and Constitutional Provisions**

5 U.S.C. § 704...................................................................................................................................9

5 U.S.C. § 705.................................................................................................................................30

5 U.S.C. § 706...................................................................................................................................9

5 U.S.C. § 706(2)(A)...................................................................................................................8, 12

5 U.S.C. § 706(2)(B)...................................................................................................................8, 19

5 U.S.C. § 706(2)(D)...................................................................................................................8, 10

6 U.S.C. § 271(b) ..............................................................................................................................2

6 U.S.C. § 557...................................................................................................................................2

8 C.F.R. § 2.1 .................................................................................................................................2

8 C.F.R. § 310.1 .............................................................................................................................2

8 C.F.R. § 310.1(a) .........................................................................................................................2

8 C.F.R. § 310.3 .............................................................................................................................2

8 C.F.R. § 310.3(a) .........................................................................................................................2

8 U.S.C. § 1421 ..............................................................................................................................2

8 U.S.C. § 1421(a) ..........................................................................................................................2

8 U.S.C. § 1421(b)(1)(B) ...............................................................................................................2

8 U.S.C. § 1443 ..............................................................................................................................2

8 U.S.C. § 1443(h) ..........................................................................................................2, 11, 13, 26

8 U.S.C. § 1448 ..............................................................................................................................2

8 U.S.C. § 1448(a) ........................................................................................................................11

26 U.S.C. § 501(c)(3) ...................................................................................................................15

26 U.S.C. § 501(c)(4) ...................................................................................................................15

Colo. Rev. Stat. § 1-4-502 ...........................................................................................................16

N.Y. Const., art. II, § 8 ................................................................................................................16

Wis. Stat. § 7.20(2) ......................................................................................................................16

**Other Authorities**

Exec. Order No. 14148, 90 Fed. Reg. 8237 (Jan. 20, 2025) .....................................................5, 13

Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025) ..................................................5, 13

*FAQs*, Mississippi Secretary of State, https://www.sos.ms.gov/elections-voting/faqs (last visited Dec. 15, 2025) .............................................................................................................................18

Fed. R. Civ. P. 65(c) .....................................................................................................................30

*Frequently Asked Questions*, Montana Secretary of State, https://votemt.gov/frequently-asked-questions/ (last visited Dec. 15, 2025) ...................................................................................18

*How to Register or Update your registration information*, Texas Secretary of State, https://www.votetexas.gov/register-to-vote/update-voter-registration.html (last visited Dec. 15, 2025) .............................................................................................................................18

*Register to Vote*, New Hampshire Secretary of State, https://www.sos.nh.gov/elections/register-vote (last visited Dec. 17, 2025) .................................................................................18

*Register to Vote*, South Dakota Secretary of State, https://sdsos.gov/elections-voting/voting/register-to-vote/default.aspx (last visited Dec. 15, 2025) .................................18

*Registering to Vote*, Wyoming Secretary of State, https://sos.wyo.gov/Elections/State/RegisteringToVote.aspx (last visited Dec. 15, 2025)......18

USCIS Policy Manual, Vol. 12, Part J, Ch. 4 (2025), *available at* https://www.uscis.gov/policy-manual/volume-12-part-j-chapter-4 .................................................................................11

USCIS Policy Manual, Vol. 12, Part J, Ch. 5, Sec. H (2025), *available at* https://www.uscis.gov/policy-manual/volume-12-part-j-chapter-5 ....................................2, 23

*Voter Registration Information*, Arkansas Secretary of State, https://www.sos.arkansas.gov/elections/voter-information/voter-registration-information (last visited Dec. 15, 2025) ................................................................................................18

**INTRODUCTION**

For many years, the League of Women Voters, ("LWV") and state and local Leagues (together "the League"), had been a trusted partner of USCIS in helping hundreds of thousands of new citizens register to vote at naturalization ceremonies. The League has always conducted this work in a proudly nonpartisan manner, with a single goal: encouraging robust civic participation among new Americans. Registering new voters—including new Americans—is a core part of the League's mission to empower voters and promote democracy.

On August 29, 2025, USCIS arbitrarily and capriciously changed course and barred nonpartisan, nongovernmental groups like the League from offering voter registration assistance at administrative naturalization ceremonies. *See* Ex. 1, *Policy Alert: Voter Registration at Administrative Naturalization Ceremonies* (PA-2025-21) (hereinafter, "Voter Registration Ban," "Ban").[1] The Voter Registration Ban is procedurally and substantively unlawful. USCIS did not follow the notice and comment requirements of the Administrative Procedure Act ("APA") and USCIS's stated rationales for the Ban flout the APA's prohibition on arbitrary and capricious agency action. Moreover, the Voter Registration Ban violates the League's First Amendment rights. The Ban discriminates—based on viewpoint, content, and the identity of the speaker—against speech promoting voter participation for new citizens, and tramples on the League's freedom of association. Plaintiffs respectfully request that this court preliminarily enjoin or stay the Ban so new citizens can access the franchise and the League can exercise its protected First Amendment rights without discrimination.

---

[1] All exhibits cited are attached as numbered to the accompanying declaration from counsel for Plaintiffs.

## BACKGROUND

### I. USCIS Had Consistently Adopted Rules Allowing Nongovernmental, Nonpartisan Groups to Provide Voter Registration Assistance to New Citizens.

Since USCIS first began administering administrative naturalization ceremonies after the establishment of the agency in 2002,[2] it had consistently permitted nongovernmental organizations to provide voter registration services to newly naturalized citizens. In 2011, after providing notice and allowing public comment,[3] USCIS revised its Manual to ensure that voter registration access was being uniformly provided at administrative naturalization ceremonies nationwide.[4]

Since 2011, USCIS rules regarding voter registration had largely remained unchanged. USCIS rules had provided that "if state or local election officials are unable to participate" in an administrative naturalization ceremony, nongovernmental groups could participate instead. Ex. 3 at 8. At all times, the rules have required that participating nongovernmental organizations be "both non-profit and non-partisan." *Id.* Under previous USCIS rules, participating nongovernmental organizations could distribute voter registration application forms; assist interested applicants in completing those forms; review forms to ensure completion; collect them to return for submission to local election officials; and provide non-partisan educational information on the voting process.[5] The rules also placed

---

[2] Congress provided the Attorney General with the authority and responsibility to make rules and regulations regarding the naturalization process, including the oath of allegiance. 8 U.S.C. §§ 1421, 1443, 1448; 8 C.F.R. §§ 310.1(a), 310.3. Congress further mandated that the Attorney General must distribute information concerning the benefits of citizenship and must seek community-group assistance in doing so. 8 U.S.C. § 1443(h). The Attorney General's powers regarding naturalization have since been delegated to DHS and USCIS. *See* 8 U.S.C. § 1421(a); 6 U.S.C. § 271(b); 6 U.S.C. § 557; 8 C.F.R. § 2.1; 8 C.F.R. § 310.1. In an administrative naturalization ceremony, USCIS administers the oath of allegiance. 8 C.F.R. § 310.3(a). In a judicial naturalization ceremony, the oath is administered by a court. 8 U.S.C. § 1421(b)(1)(B).

[3] *See* Ex. 2, Memo for Comment (PM-602-0014) (Dec. 16, 2010). The request for comments was not published in the Federal Register.

[4] *See* Ex. 3, Policy Memorandum (PM-602-0014.1) (Sep. 20, 2011). The USCIS Policy Manual is the agency's centralized repository policy documents and rules, including voter registration at administrative naturalization ceremonies.

[5] *See* Ex. 4, 2018 USCIS Policy Manual Vol. 12, Part J, Ch. 5, Sec. F at 8; Ex. 5, 2021 USCIS Policy Manual Vol. 12, Part J, Ch. 5, Sec. F. at 21.

limitations on nongovernmental organizations' conduct at the ceremonies by prohibiting them from engaging in partisanship or discriminating on any basis in offering registration assistance.[6]

When neither state nor local officials nor nongovernmental groups could attend, the rules required USCIS staff to distribute voter registration applications, but not to collect and return completed forms or otherwise provide registration assistance.[7]

## II.    For Years, the League of Women Voters Successfully Conducted Voter Registration at Administrative Naturalization Ceremonies Across the Country, Registering Tens of Thousands of New Citizens.

The Plaintiffs in this case all relied on USCIS's previously existing rules to reach and empower new citizens to register to vote. Plaintiff League of Women Voters is a nonprofit, nonpartisan, grassroots membership organization that promotes political responsibility by encouraging Americans to participate in the electoral process.[8] The League has more than a million members and supporters and is organized in every state and in the District of Columbia across nearly 800 communities. *See* Ex. 6, Decl. of Celina Stewart ("LWV Decl.") ¶ 4.

In 2012, LWV began providing local and state Leagues with grant funding and strategic support to register new citizens at naturalization ceremonies. LWV Decl. ¶ 11. Since then, and as shown in the following chart, the League's success in reaching new citizens at naturalization ceremonies has grown steadily because of the dedicated work of League staff, members, and volunteers across the country.[9] Indeed, no other organization has assisted more new citizens in registering to vote at administrative naturalization ceremonies than the League. LWV Decl. ¶ 7.

---

[6] *See* Ex. 4 at 8–9; Ex. 5 at 22–23. If the rules were not followed, USCIS was authorized to revoke permission to participate. Ex. 4 at 10; Ex. 5 at 23.

[7] *See* Ex. 3 at 10; Ex. 4 at 8; Ex. 5 at 21.

[8] LWV is composed of two branches: the League of Women Voters of the United States ("LWVUS"), a 501(c)(4) social welfare organization, and the League of Women Voters Education Fund ("LWVEF"), a 501(c)(3) organization that registers and provides voters with election information and candidate forums. LWV Decl. ¶ 4. "LWV" refers to the national organizations of LWVEF and LWVUS, whereas "the League" refers to the organization as a whole.

[9] These figures include judicial and administrative naturalization ceremonies and the number of voters reached at both. *See* LWV Decl. ¶¶ 12–13.

| Year | Approximate Number of Naturalization Ceremonies Attended by League Volunteers | Approximate Number of New American Citizens Assisted in Registering to Vote by League Volunteers |
|---|---|---|
| 2016 | 220 | 19,000 |
| 2017 | 450 | 25,000 |
| 2018 | 762 | 28,000 |
| 2022 | 800 | 37,000 |
| 2024 | 2,789 | 122,000 |
| 2025 | 1,819 | 82,591 |

Promoting voter registration to new citizens is also a core part of the state and local League Plaintiffs' mission. [10] All League Plaintiffs are nonpartisan and nonprofit membership organizations.[11] Since 2017, Plaintiff League of Women Voters of Colorado ("LWVCO") and local Colorado Leagues have registered more than 6,000 naturalized citizens to vote at more than 200 administrative naturalization ceremonies across the state. LWVCO Decl. ¶ 6. Plaintiff League of Women Voters of New Jersey (LWVNJ") and its local Leagues began participating in naturalization ceremonies in 2017. LWVNJ Decl. ¶ 8. In 2025 alone, three local New Jersey Leagues attended 196 ceremonies, reaching 5,688 new citizens and registering 2,583 new citizens to vote. LWVNJ Decl. ¶ 10.

As part of its mission to encourage civic participation, Plaintiff League of Women Voters of the Charleston Area ("Charleston League") has attended and provided voter registration and education services at administrative naturalization ceremonies since 2003. Charleston Decl. ¶ 5. While the ceremony schedule has changed over the years—with ceremonies occurring anywhere from once a week in 2015, to up to four times a week as of 2025—the Charleston League has reliably provided voter registration assistance and education at the majority of administrative

---

[10] Ex. 7, Decl. of Beth Hendrix ("LWVCO Decl.") ¶¶ 6, 11–12, 24–25, 36, 43, 52–53, 64–65; Ex. 8, Decl. of Jesse Burns ("LWVNJ Decl.") ¶¶ 2, 3, 7; Ex. 9, Decl. of Jeri Olejniczak Cabot ("Charleston Decl.") ¶ 5; Ex. 8, Decl. of Peg Schrader ("Milwaukee Decl.") ¶¶ 4–6; Ex. 9, Decl. of Lori Dawson ("Saratoga Decl.") ¶ 6.
[11] LWVCO Decl. ¶ 4; LWVNJ Decl. ¶ 3; Charleston Decl. ¶ 4; Saratoga Decl. ¶ 4; Milwaukee Decl. ¶ 4.

naturalization ceremonies in Charleston County for decades. *Id.* ¶ 6. As a result, the Charleston League has provided voter registration assistance and education to thousands of new citizens over the years. *Id.* Plaintiff League of Women Voters of Milwaukee County ("Milwaukee League") has been providing voter registration assistance and education at naturalization ceremonies for over 50 years. Milwaukee Decl. ¶ 6. In 2024 and 2025, the Milwaukee League members and volunteers engaged 2,678 new citizens at administrative naturalization ceremonies, including assisting with 387 voter registrations and providing educational information to another 2,291 naturalized citizens about how to complete a voter registration application on their own time. *Id.* ¶¶ 8–9. Finally, Plaintiff League of Women Voters of Saratoga County ("Saratoga League") had attended two administrative naturalization ceremonies per year that take place mainly in the Saratoga National Historical Park, a public U.S. National Park Service site. Saratoga Decl. ¶ 7.

### III. USCIS Abruptly Bans All Nongovernmental Organizations From Providing Voter Registration and Civic Education And Provides No Factual Support For Its Asserted Justifications In Doing So.

The Voter Registration Ban provides that "only state and local election officials will be permitted to offer voter registration services at the end of administrative naturalization ceremonies" and states that USCIS was taking this action "consistent with Executive Order 14148, Initial Recissions of Harmful Executive Order and Actions executed on January 20, 2025, and Section 9 of the Executive Order 14248, Preserving and Protecting the Integrity of American Elections." Ban at 1. The Ban does not explain how either cited Executive Order compels the action taken. The Ban also includes a section entitled "Additional Considerations[:] Administrative Procedure Act" that asserts the following purported justifications, namely that:

1) USCIS's use of nongovernmental organizations was "sporadic and varied based upon the location[;]"
2) there was an "administrative burden on USCIS to ensure that those nongovernmental organizations . . . are nonpartisan[;]"

3) that "USCIS does not primarily rely on nongovernment organizations for voter registration services[;]"

4) that this "change in no way impacts new citizens' access to information and applications to register to vote, as this information will continue to be provided by state or local officials, or USCIS[;]"

5) "with the availability of online voter registration in most states, there is a reduced need for nongovernmental organizations to assist new citizens with collecting and submitting their voter registration applications[;]" and

6) USCIS does not believe "that aliens or nongovernmental organizations have any reliance interests related to . . . being present at naturalization ceremonies, but even if they do" they are purportedly outweighed by USCIS's interest in "ensuring fair and impartial voter registration services" at administrative naturalization ceremonies.

Ban at 2–3. USCIS does not provide any facts supporting these asserted justifications.

## IV.   Impact of the Voter Registration Ban on Plaintiffs.

USCIS's Voter Registration Ban has already dramatically impeded the League's ability to provide voter registration access to new citizens, resulting in the League reaching fewer new citizen voters.[12] Multiple Leagues have reported that they are no longer receiving information about upcoming administrative naturalization ceremonies, including even a schedule of when and where such ceremonies are occurring. *E.g.*, LWV Decl. ¶ 26. Since USCIS issued the Ban, numerous Leagues have been forced to cancel voter registration activities planned at upcoming administrative naturalization ceremonies.[13] To date, Leagues across the country have had to cancel at least 166 planned events at administrative naturalization ceremonies, where League members and volunteers planned to register roughly 10,000 new voters. Approximately $17,000 worth of volunteer time—488 hours—and more than $6,600 for materials were already invested for these now-cancelled events. LWV Decl. ¶¶ 24.

---

[12] LWV Decl. ¶ 28; LWVCO Decl. ¶¶ 10, 22, 40, 51, 63, 70; LWVNJ Decl. ¶¶ 15, 17; Charleston Decl. ¶¶ 7, 10, 17; Saratoga Decl. ¶¶ 10, 14-15; Milwaukee Decl. ¶¶ 13, 17, 22.

[13] LWVNJ Decl. ¶ 14; LWVCO Decl. ¶¶ 17, 28; Saratoga Decl. ¶¶ 9–10.

By barring the League from participating in administrative naturalization ceremonies, USCIS's Voter Registration Ban has severed longstanding, established processes by which Leagues have for decades reached newly naturalized American citizens to assist them in voter registration. LWV Decl. ¶ 27. Moreover, the opportunity to provide voter registration assistance and civic education to new Americans at naturalization ceremonies is an important draw for members and volunteers of many Leagues.[14] League members and volunteers engage in this expressive activity to communicate the view that all American citizens—native born and naturalized alike—are equally worthy of participating in the franchise.[15] The League's ability to recruit, retain, and engage its membership and carry out its core mission is harmed by the Ban. LWV Decl. ¶ 29. If allowed to stand, USCIS's Voter Registration Ban will continue to substantially burden the First Amendment speech and associational rights of the League and its members and volunteers, while eroding one of the most meaningful rites of passage into citizenship—the opportunity for new citizens, like all eligible Americans—to register and vote.

## LEGAL STANDARD

To obtain a preliminary injunction, Plaintiffs must establish: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm absent relief; (3) that the balance of equities favors them; and (4) that an injunction is in the public interest. *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The balance of equities and the public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "These same elements also govern issuance of a stay" under 5 U.S.C. § 705. *Asylum Seeker Advoc. Project v.*

---

[14] LWV Decl. ¶ 29; LWVCO Decl. ¶¶ 10, 18, 26, 33, 49, 60, 69; LWVNJ Decl. ¶¶ 6, 17; Charleston Decl. ¶¶ 11–12; Saratoga Decl. ¶ 11; Milwaukee Decl. ¶ 15.
[15] LWV Decl. ¶ 29; LWVCO Decl. ¶¶ 7, 13; LWVNJ Decl. ¶¶ 5, 7; Charleston Decl. ¶ 5; Saratoga Decl. ¶ 6; Milwaukee Decl. ¶ 6.

7

*USCIS*, No. CV SAG-25-03299, 2025 WL 3029552, at *3 (D. Md. Oct. 30, 2025) (citing *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 935, 950 (D. Md. 2020)). As set forth below, each requirement is satisfied here.

## ARGUMENT

### I. Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs are likely to succeed on the merits of their APA claims because the Voter Registration Ban was unlawfully issued without notice and comment rulemaking, 5 U.S.C. § 706(2)(D), is arbitrary and capricious, *id.* § 706(2)(A), and is contrary to Plaintiffs' constitutional rights, *id.* § 706(2)(B). Plaintiffs are also likely to succeed on their First Amendment claims because the Ban irrationally burdens and discriminates against Plaintiffs' core political speech and association rights and cannot survive any level of scrutiny.

### A. Plaintiffs Have Standing to Challenge the Voter Registration Ban.

To demonstrate standing, Plaintiffs must show that they: (1) "suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Md. v. USDA*, 151 F.4th 197, 208 (4th Cir. 2025) (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020)). Plaintiffs easily meet these requirements. First, the Voter Registration Ban has caused Plaintiffs to suffer numerous concrete, particularized, and actual injuries. Registering new voters, including new citizens, is at the core of Plaintiffs' missions, and is closely tied to Plaintiffs' ability to recruit and retain members. As a result of being barred from participating in administrative naturalization ceremonies, one of Plaintiffs' primary activities has been cut off completely and Plaintiffs are able to reach and register fewer new citizens.[16] Not only have Plaintiffs' missions and activities been

---

[16] LWV Decl. ¶¶ 5, 9, 12, 28–29; LWVCO Decl. ¶¶ 6, 10, 24, 36–37, 52, 57, 63, 65, 70; LWVNJ Decl. ¶¶ 2, 3, 7, 14–15; Charleston Decl. ¶¶ 5, 7, 10, 17; Saratoga Decl. ¶¶ 6, 10, 14–15; Milwaukee Decl. ¶¶ 5, 6, 13, 22.

frustrated by the Ban, it has forced Plaintiffs to expend resources in an effort to find other ways to reach these new citizens.[17] *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (explaining that an organization suffers a cognizable injury when a defendant's actions have "directly affected and interfered with [the plaintiff organization's] core business activities").

The Voter Registration Ban also infringes Plaintiffs' ability, and that of their members and volunteers, to engage in expressive activity to communicate the view that it is an important responsibility to assist new Americans in registering to vote and educating them about the value of civic participation. These harms are more than sufficient to establish Article III injury as to Plaintiffs' APA and First Amendment claims.[18]

Causation and redressability are also easily met as Defendants instituted the Ban, and a judicial decision setting it aside would ensure that the League is once again able to effectively reach and engage new citizen voters in furtherance of its mission.

### B.  The Ban Violates the Administrative Procedure Act.

A party harmed by final agency action may seek judicial review under the APA, and if the challenged action did not undergo the statutorily mandated procedures, is arbitrary and capricious, or is otherwise not in accordance with the law, it must be set aside. 5 U.S.C. § 706.

### 1.  The Ban is Judicially Reviewable Because it is Final Agency Action.

As a threshold matter, the Voter Registration Ban is subject to judicial review because it is a final agency action. 5 U.S.C. §§ 704, 706. An action is final, and thus reviewable, when it: (1) "mark[s] the consummation of the agency's decisionmaking process," and (2) conclusively

---

[17] LWV Decl. ¶ 27; LWVCO Decl. ¶¶ 9, 21, 31, 51, 62; LWVNJ Decl. ¶¶ 15–16; Charleston Decl. ¶ 14; Saratoga Decl. ¶ 14; Milwaukee Decl. ¶ 21.

[18] For an APA notice-and-comment claim "[d]eprivation of a procedural right . . . can constitute an injury for purposes of standing when it is tied to a specific resultant harm." *Nat'l Fed'n of the Blind v. U.S. Dep't of Educ.*, 407 F. Supp. 3d 524, 533 (D. Md. 2019). And under the First Amendment, "to demonstrate injury in fact, it is sufficient to show that one's First Amendment activities have been chilled." *Cooksey v. Futrell*, 721 F.3d 226, 236–37 (4th Cir. 2013) (citation omitted).

determines legal "rights or obligations." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotations omitted). The Voter Registration Ban meets both prongs. First, there is nothing "interlocutory" or "tentative" about the Ban, nor is there anything further for USCIS to decide. *Bennett*, 520 U.S. at 178. On its face, the Ban is "effective immediately," and applies "to ceremonies held on or after the publication date." Ban at 1. Second, once issued, the Ban "bound [USCIS] staff by forbidding them to continue" allowing Plaintiffs to offer voter registration at administrative naturalization ceremonies "from that moment on." *Biden v. Texas*, 597 U.S. 785, 808–09 (2022) (citation and quotations omitted). And indeed, USCIS has applied the Ban "in a way that indicates it is binding." *AFT v. Dep't of Educ.*, 796 F. Supp. 3d 66, 100 (D. Md. 2025) (quoting *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002)); *see* LWVCO Decl. ¶¶ 16, 46; Milwaukee Decl. ¶ 14. The Ban is therefore subject to challenge under the APA.

### 2. The Ban Is a Legislative Rule That Required Notice and Comment Rulemaking.

The Voter Registration Ban must be set aside because it is a legislative rule that was unlawfully issued without notice and comment rulemaking. *See* 5 U.S.C. § 706(2)(D). Legislative rules are "statement[s] of general or particular applicability and future effect" that "implement, interpret, or prescribe law or policy," and have the "force and effect of law." *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95–96 (2015) (citation and quotations omitted). A rule that "adopts a new position inconsistent with existing regulations[] or otherwise effects a substantive change in existing law or policy" is a legislative rule. *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 620 (4th Cir. 2018) (quoting *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014)). Failure to comply with the APA's notice and comment requirements renders a legislative rule "invalid from the date of its issuance." *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1341 n.9 (4th Cir. 1995).

10

Because the Ban "substantively alters the legal landscape in ways that have the force and effect of law, it must be a legislative rule." *AFT v. Dep't of Educ.*, 779 F. Supp. 3d 584, 612 (D. Md. 2025). Prior to the issuance of the Ban, USCIS had for many years, across administrations, allowed nonprofit, nonpartisan organizations to provide voter registration at administrative naturalization ceremonies. *See supra* at 3–5. USCIS's prior policies were consistent with applicable law. To start, naturalization ceremonies are required by law to be "public."[19] Moreover, Congress has mandated that immigration authorities are to "seek the assistance of appropriate community groups, private voluntary agencies, and other relevant organizations" in "promot[ing] the opportunities and responsibilities of United States citizenship." 8 U.S.C. § 1443(h).

But the Ban upended the existing legal landscape, by shutting groups like the League out, and requiring USCIS officers to silence the League's speech in providing voter registration to new citizens. On its face, and in actual application, there is no question that the Ban has "the force and effect of law." *E.g.*, Milwaukee Decl. ¶ 14. As a direct result of the Ban, Plaintiffs' efforts to reach new citizen voters at administrative naturalization ceremonies have been halted. Yet, prior to issuing the Ban, USCIS engaged in no notice and comment procedures. Because the Ban "effects a substantive change in existing law or policy," *Children's Hosp.*, 896 F.3d at 620, and because this sharp departure was not accomplished through notice and comment rulemaking, it is procedurally invalid and must be set aside. *Id.*

### 3. The Ban Violates the APA's Prohibition on Arbitrary and Capricious Action.

---

[19] *See* 8 U.S.C. § 1448(a) (requiring persons admitted to citizenship to take oath "in a *public* ceremony"); USCIS Policy Manual, Vol. 12, Part J, Ch. 4 (2025) ("[a]n applicant must appear in person at a *public* ceremony"), *available at* https://www.uscis.gov/policy-manual/volume-12-part-j-chapter-4 (emphases added). This requirement is not a mere technicality. Courts have held that oaths of allegiance issued in non-public settings are invalid. *See Brown v. Holder*, 763 F.3d 1141, 1152 (9th Cir. 2014) (collecting cases).

Agency action that is arbitrary and capricious must be set aside as unlawful. 5 U.S.C. § 706(2)(A).[20] "Generally, an agency decision is arbitrary and capricious if 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

To satisfy the APA, the agency must have examined the relevant facts and must have "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Sierra Club*, 899 F.3d at 293 (citation and quotations omitted). Agency action that lacks a reasoned "factual basis" violates the APA's prohibition on arbitrary and capricious action. *AFL-CIO v. Fed. Labs. Rels. Auth.*, 25 F.4th 1, 10 (D.C. Cir. 2022). Thus, where an agency has made "factual assertions without support, or fail[ed] to consider facts at all," the challenged action is arbitrary and capricious. *AFT*, 796 F. Supp. 3d at 106. The Voter Registration Ban is arbitrary and capricious because Defendants' asserted justifications are factually unsupported, illogical and irrational, and because Defendants failed to consider key facts, reasonable alternatives, and the substantial reliance interests at stake.

As discussed below, none of the cited Executive Orders support or justify the Ban. Nor do any of the factually threadbare justifications asserted actually support the Ban. The APA simply does not permit an agency to do what USCIS did here—that is, to undertake a significant "change in position" as to rules previously in place for years that implicate "significant reliance interests" and constitutional rights, while offering "barely any explanation" for the change. *Encino Motorcars, LLC v. Navarro*,

---

[20] Even if this Court finds that the Ban was not subject to notice-and-comment rulemaking, the Ban still violates the prohibition on arbitrary and capricious agency action. *See, e.g.*, *CASA de Md. v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 703, 705 (4th Cir. 2019).

579 U.S. 211, 222 (2016). When an agency changes a longstanding position, as here, it must provide a "reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009). The factually baseless assertions that USCIS offered here do not constitute a "reasoned explanation."

### a. The Cited Executive Orders Neither Require, Support, Nor Justify The Voter Registration Ban.

To start, the Voter Registration Ban proceeds as if it is implementing a command from two recent Executive Orders issued by President Trump. That is not so. The first cited Order, EO 14148 was issued on the first day of President Trump's second term and revoked a host of Executive Orders previously signed by President Biden on a wide variety of topics. *See* Exec. Order No. 14148, 90 Fed. Reg. 8237 (Jan. 20, 2025). The Voter Registration Ban singles out one such revocation: Executive Order 14019, Promoting Access to Voting. *See* Ban at 1 n.2 (citing Exec. Order No 14019, 86 Fed. Reg 13623 (Mar. 7, 2021)). EO 14019 had instructed all federal agencies to consider how they could promote access to voter registration, including "soliciting and facilitating approved, nonpartisan third-party organizations and State officials to provide voter registration services on agency premises." 86 Fed. Reg. at 13624. But EO 14019 did not address voter registration at administrative naturalization ceremonies. Nor was EO 14019 the impetus for USCIS's longstanding rules allowing nongovernmental organizations, such as Plaintiffs, to provide voter registration assistance. USCIS's efforts to partner with nongovernmental community organizations had pre-existing statutory support and had been allowed under the agency's rules for years before issuance of EO 14019. *See* 8 U.S.C. § 1443(h); *See also* Ex. 3; Ex. 4; Ex. 5.

The second EO that the Ban cites—Section 9 of EO 14248—is equally irrelevant. Ban at 1. That provision asks the heads of all federal agencies to submit a report to the President

describing the steps that they have taken to end compliance with the now-revoked EO 14019. *See* 90 Fed. Reg. 14005, 14009 (Mar. 25, 2025). Again, USCIS did not provide access to voter registration assistance at naturalization ceremonies as a result of EO 14019 and had instead long permitted nongovernmental participation at administrative naturalization ceremonies, including throughout the entirety of the first Trump administration.

### b. The Factual Justifications Asserted For the Voter Registration Ban Are False, Unsupported, and Illogical.

In issuing the Voter Registration Ban, USCIS has failed to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice[s] made.'" *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 25-1411, 2025 WL 1249608, at *75 (4th Cir. Apr. 30, 2025) (quoting *State Farm*, 463 U.S. at 43). First, USCIS's dismissive characterization of the nongovernmental voter registration assistance as "sporadic" is not accompanied in the Ban by any factual support and is, in reality, fundamentally false. *See* Ban at 2.[21]

Plaintiffs have regularly attended administrative naturalization ceremonies to reach and engage new citizens for decades. In the past five years alone, LWV survey data indicates that more than 90 state or local Leagues have provided voter registration assistance and civic education to new citizens at USCIS-hosted administrative naturalization ceremonies. LWV Decl. ¶¶ 19–20. In 2024, at least 80 state and local Leagues across the country provided voter registration services at 950 different administrative naturalization ceremonies, where League members and volunteers assisted a total of 31,877 newly naturalized citizens in registering to vote. *Id*. ¶ 21. In 2025, prior to the issuance of the Voter Registration Ban, League members and volunteers assisted 24,201

---

[21] Organizational declarations from each Plaintiff detail the extensive work each has done at administrative naturalization ceremonies for years. LWV Decl. ¶¶ 7, 11–17, 20–22; LWVCO Decl. ¶¶ 12–13, 25, 53, 67; LWVNJ Decl. ¶¶ 7–10; Charleston Decl. ¶¶ 5–6; Saratoga Decl. ¶ 7; Milwaukee Decl. ¶¶ 6, 8–9.

newly naturalized citizens in registering to vote in at least 864 administrative naturalization ceremonies. In total, based on 93 responding Leagues, to date in 2025, there were 2,121 League events at or near naturalization ceremonies with volunteers assisting a total of 82,591 new citizens in registering to vote. *Id*. ¶ 22. This sustained, dedicated presence is in no way "sporadic." *See State Farm*, 463 U.S. at 43 (explaining that an agency's decision is arbitrary and capricious when its "explanation for its decision . . . runs counter to the evidence before the agency"); *see also Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 619 (D.C. Cir. 2017) ("Reliance on facts that an agency knows are false at the time it relies on them is the essence of arbitrary and capricious decisionmaking.") (citation and quotations omitted).

Second, USCIS has provided no evidence that the Ban was necessary to ease the administrative burden of verifying the nonpartisanship of participating nongovernmental organizations. Ban at 2. An agency may not rely on claims that are unsupported and illogical. *See e.g.*, *Safe Extensions, Inc. v. F.A.A.*, 509 F.3d 593, 605 (D.C. Cir. 2007) (explaining that "an agency's declaration of fact that is capable of exact proof but is unsupported by any evidence is insufficient to make the agency's decision non-arbitrary") (quotation omitted). There is no reason to believe that there was any meaningful administrative burden related to verification of non-partisanship. USCIS already had an existing process, through the N-401 Form,[22] that required nongovernmental organizations to attest to their nonpartisanship and agree to follow the USCIS Policy Manual's rules regarding nonpartisan provision of voter registration services. And indeed, Plaintiffs are all 501(c)(3) and/or (c)(4) organizations, meaning that the IRS already scrutinizes their nonpartisan status.[23] Moreover, many Leagues began providing voter registration and civic

---

[22] Ex. 13, USCIS Form N-401.
[23] *See* 26 U.S.C. §§ 501(c)(3), (4); LWV Decl. ¶ 4; LWVCO Decl. ¶ 4; LWVNJ Decl. ¶ 3; Charleston Decl. ¶ 4; Saratoga Decl. ¶ 4; Milwaukee Decl. ¶ 4.

education services at administrative naturalization services years ago, such that their nonpartisan status has long been verified by USCIS.[24]

Third, while USCIS claims that excluding nongovernmental organizations will "ensur[e] fair and impartial voter registration services" in light of partisanship concerns, Ban at 3, this claim is nonsensical. Under the Voter Registration Ban, USCIS continues to permit "state and local election officials" to provide voter registration assistance, while prohibiting groups like Plaintiffs from doing so. Ban at 1. But these election officials are often elected in partisan elections as partisan candidates. *See, e.g.*, Colo. Rev. Stat. § 1-4-502; N.Y. Const., art. II, § 8; Wis. Stat. § 7.20(2). USCIS therefore, chose to replace demonstrably nonpartisan organizations with statutorily-designated partisan officials as the primary source of voter registration assistance and education. In addition, Plaintiffs are unaware of any complaints of improper partisanship stemming from the League participation in registering and speaking with new citizens at USCIS naturalization ceremonies. USCIS has never reported an incident or concern to LWV, nor has LWV received any such reports from any of its state or local Leagues.[25] The assertion that excluding organizations like Plaintiffs will somehow make administrative naturalization ceremonies more nonpartisan, "fair[,] and impartial" is baseless. Again, "giving contrived and contradictory reasons for . . . unsupported agency action is quintessentially arbitrary and capricious." *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 844 (D.C. Cir. 2025) (citation omitted).

Fourth, it is not true that "USCIS does not primarily rely on nongovernment organizations for voter registration services," or "[t]his change in no way impacts new citizens' access to

---

[24] LWVCO Decl. ¶¶ 12–13, 15, 36, 38, 43–44, 47; LWVNJ Decl. ¶¶ 7, 9,11; Charleston Decl. ¶¶ 5, 9; Saratoga Decl. ¶¶ 7–8; Milwaukee Decl. ¶¶ 5, 7, 10–12.
[25] LWV Decl. ¶ 23; LWVCO Decl. ¶¶ 16, 29, 38, 47; LWVNJ Decl. ¶¶ 7, 11; Charleston Decl. ¶ 9; Saratoga Decl. ¶ 8; Milwaukee Decl. ¶ 12.

16

information and applications to register to vote." Ban at 2–3. Under pre-existing rules, USCIS relied on *both* nongovernmental organizations and local election officials—as complements—to ensure all ceremonies provided new citizens with both "voter registration applications *and general information*." Ban at 2 (emphasis added). Under those rules, nongovernmental organizations like the League only provided voter registration services at administrative naturalization ceremonies where state or local officials were not doing so. In other words, when the League offered voter registration assistance at an administrative naturalization ceremony, it was there because state and local officials were not doing so, and without nongovernmental participation, there would have been *no* in-person registration assistance. And while USCIS officials were required to provide voter registration forms, USCIS staff have never been required by USCIS policies to collect and return completed applications or answer questions about voter participation. But this is exactly what the League does in providing not only registration forms, but information about state-specific voter registration rules, the dates of upcoming elections, or how to find polling locations. League volunteers frequently answered questions from new citizens about the voting and registration process.[26]

Removing organizations like the League from administrative naturalization ceremonies will undoubtedly result in less voter participation information being shared with new citizens.[27] Even where local election officials are committed to such outreach, it is unlikely that they can devote the time to regularly attending administrative naturalization ceremonies with the same frequency that the League and its thousands of volunteers and members did. LWV Decl. ¶ 15;

---

[26] LWV Decl. ¶¶ 15–17; LWVCO Decl. ¶¶ 13, 33; LWVNJ Decl. ¶ 5; Charleston Decl. ¶¶ 8–9; Saratoga Decl. ¶ 8; Milwaukee Decl. ¶¶ 12, 18, 20.

[27] Moreover, while the Voter Registration Ban on its face still compels USCIS to distribute voter registration forms, some local USCIS officials are taking their cue from the anti-voter tone set by the Ban and are refusing to distribute voter registration forms to new citizens. LWVNJ Decl. ¶ 12; Ex. 12, Decl. of Karen Anne Crowley ("LWV-WA Decl.") ¶ 5.

LWVCO Decl. ¶ 9; Charleston Decl. ¶ 9. Again, the League could only attend under prior USCIS rules where state and local elected officials chose not to. There is no reason to think that state and local elections officials are now willing or able to do something they had not been doing for years. These threadbare justifications ignore the complementary role nongovernmental organizations and election officials have played in providing voter registration information to new citizens and the education and information those entities provide to new citizens that USCIS does not and cannot.

Fifth, the fact that voter registration applications can now be submitted online in no way supports the Voter Registration Ban. Ban at 3. Prior to the Ban, USCIS had long recognized the value of having information and questions about the voting process answered by state and local election officials or nongovernmental organizations like the League. Such information is valuable to new citizens regardless of whether they are registering online or through paper applications. Moreover, there are multiple states that continue not to permit online voter registration.[28] In 2024 and 2025, state and local Leagues provided voter registration assistance at numerous administrative naturalization ceremonies in states where, by state law, voters cannot submit a voter registration application online. LWV Decl. ¶ 22. The League's presence at these ceremonies ensured that there was someone to whom newly naturalized citizens could return a completed voter registration form for submission, in addition to answering questions.

Sixth and finally, USCIS's cursory dismissal of the reliance interests of organizations like Plaintiffs and "aliens" is insufficient. Contrary to USCIS's claim, none of this is about the interests

---

[28] *See Voter Registration Information*, Ark. SOS, https://www.sos.arkansas.gov/elections/voter-information/voter-registration-information (last visited Dec. 15, 2025); *FAQs*, Miss. SOS, https://www.sos.ms.gov/elections-voting/faqs (last visited Dec. 15, 2025); *Frequently Asked Questions*, Mont. SOS, https://votemt.gov/frequently-asked-questions/ (last visited Dec. 15, 2025); *Register to Vote*, N.H. SOS, https://www.sos.nh.gov/elections/register-vote (last visited Dec. 17, 2025); *Register to Vote*, S.D. SOS, https://sdsos.gov/elections-voting/voting/register-to-vote/default.aspx (last visited Dec. 15, 2025); *How to Register or Update your registration information*, Tex. SOS, https://www.votetexas.gov/register-to-vote/update-voter-registration.html (last visited Dec. 15, 2025); *Registering to Vote*, Wyo. SOS, https://sos.wyo.gov/Elections/State/RegisteringToVote.aspx (last visited Dec. 15, 2025).

of "aliens." Ban at 3. Naturalized citizens have the same right to full and equal access to the franchise as every other American citizen. In ignoring the reliance interests of groups like the League—and failing to consider at all the interests of *new citizens* as opposed to *aliens*—USCIS failed to "supply a reasoned analysis for the change" and certainly did not "articulate a satisfactory explanation for its action." *State Farm*, 463 U.S. at 42–43. Had the agency conducted even a glancing analysis of Plaintiffs' potential reliance interests, it would have considered not only Plaintiffs' long history, expertise, and First Amendment interests in providing such services, but also the fact that USCIS's stated interests of judicious deployment of resources, and impartial voter registration, are better served by allowing Plaintiffs to provide voter registration and education at administrative naturalization ceremonies. In sum, the Voter Registration Ban must be set aside as arbitrary and capricious.

### 4. The Ban Violates the APA Because it is Contrary to Plaintiffs' Constitutional Rights.

For the reasons set forth below, *infra* at 19–26, the Ban also violates the APA because it unlawfully burdens Plaintiffs' First Amendment rights. *See* 5 U.S.C. § 706(2)(B).

### C. The Voter Registration Ban Violates Plaintiffs' First Amendment Speech and Association Rights Cannot Survive Any Level of Scrutiny.

Plaintiffs are substantially likely to succeed in their First Amendment challenge to the Voter Registration Ban. Because the Ban unlawfully burdens Plaintiffs' core political speech and association rights and discriminates on the basis of viewpoint, content, and speaker, it is subject to strict scrutiny. Moreover, Plaintiffs are substantially likely to succeed because the Ban cannot survive any level of scrutiny.

### 1. The Ban Unlawfully Burdens Plaintiffs' First Amendment-Protected Speech and Association.

When Plaintiffs speak to new citizens about how to register to vote and encourage those new citizens to do so at USCIS administrative ceremonies, Plaintiffs engage in activities that

"where 'the First Amendment has its fullest and most urgent application.'" *See LWV v. Hargett*, 400 F. Supp. 3d 706, 722 (M.D. Tenn. 2019) (quoting *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989)). That is so because engaging with and assisting persons in registering to vote is "core political speech" where First Amendment protections are at their "zenith." *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988); *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 183 (1999).[29]

The Voter Registration Ban cuts off Plaintiffs' ability to reach and encourage new citizens to register to vote and therefore impedes "pure speech[.]" *Hargett*, 420 F. Supp. 3d at 720. By prohibiting Plaintiffs from engaging in voter registration education and assistance at USCIS administrative naturalization ceremonies, the Ban prevents Plaintiffs from engaging in speech and expressive conduct that communicates their belief that democracy works best when all citizens, native born and naturalized alike, are engaged and encouraged to exercise their right to vote. This burdens Plaintiffs' First Amendment rights. Indeed, "endeavors to assist people with voter registration are intended to convey a message that voting is important, that the Plaintiffs believe in civic participation, and that the Plaintiffs are willing to expend the resources to broaden the electorate to include allegedly under-served communities, and thus is expressive conduct which implicates the First Amendment." *See Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 223 (M.D.N.C. 2020) (internal quotation and citation omitted).

---

[29] *See also Tenn. State Conf. of N.A.A.C.P. v. Hargett*, 420 F. Supp. 3d 683, 704 (M.D. Tenn. 2019) (finding voter registration assistance regulations must be "substantially related to important governmental interests" to survive "exacting scrutiny"); *LWV of Fla. v. Cobb*, 447 F. Supp. 2d 1314, 1334 (S.D. Fla. 2006) ("[T]he collection and submission of voter registration drives is intertwined with speech and association" and therefore "comes within the protections of the First Amendment"); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 698, 700 (N.D. Ohio 2006) ("[P]articipation in voter registration implicates a number of both expressive and associational rights which are protected by the First Amendment. These rights . . . may be invoked by . . . third parties who encourage participation in the political process through increasing voter registration rolls.").

20

In addition, the Ban unlawfully prohibits Plaintiffs from associating with new citizens and Plaintiffs' own members through voter registration at administrative naturalization ceremonies. The First Amendment right to associate applies when "plaintiffs wish to speak and act collectively with others," particularly when plaintiffs seek "to associate with others for political ends." *LWV of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1158–59 (N.D. Fla. 2012). Restrictions on distributing voter registration applications "bear[] directly on the expressive and associational aspects" at the core of civic engagement work. *Hargett*, 400 F. Supp. 3d at 720. This is because "[a]n organization's attempt to broaden the base of public participation in and support for its activities is conduct undeniably central to the exercise of the right of association." *VoteAmerica v. Schwab*, 576 F. Supp. 3d 862, 875 (D. Kan. 2021) (citation omitted).

### 2. The Ban is Subject to Strict Scrutiny.

Strict scrutiny applies to the Ban for any of four independently sufficient reasons: the Ban infringes on Plaintiffs' core political speech; the Ban infringes on Plaintiffs' ability to exercise their right to freely associate; the Ban discriminates based on viewpoint; and the Ban discriminates based on content and speaker. The Ban cannot survive strict scrutiny because there is no compelling state interest to justify it and because it is not narrowly tailored.

Again, because the Ban severely impedes Plaintiffs' voter registration efforts, which are precisely "the type of interactive communication . . . described as 'core political speech,'" the Ban triggers strict scrutiny under the *Meyer-Buckley* framework. *Meyer*, 486 U.S. 414, 421–22 (1988); *see also Buckley*, 525 U.S. at 207 (Thomas, J., concurring in the judgment) ("When a State's election law directly regulates core political speech, we have always subjected the challenged restriction to strict scrutiny and required that the legislation be narrowly tailored to serve a compelling governmental interest."). When Plaintiffs and their members register voters, including at USCIS ceremonies, they communicate a message about the importance of political participation

that is central to their missions.[30] Plaintiffs' voter registration at USCIS ceremonies "involves both the expression of a desire for [an engaged electorate] and a discussion of the merits of [voting]." *Meyer*, 486 U.S. at 421.

Second, the Ban is subject to strict scrutiny because it prohibits Plaintiffs from engaging in their First Amendment rights to associate. *See supra* at 20. When individuals or groups "wish to speak and act collectively with others," it "implicat[es] the First Amendment right of association." *Browning*, 863 F. Supp. 2d at 1158. These associational burdens are also subject to strict scrutiny. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647–48 (2000).

Third, by singling out nongovernmental organizations that actively seek to increase naturalized citizen voter participation, the Ban discriminates against Plaintiffs based on their views that voter participation by naturalized citizens is fundamental to a healthy democracy.[31] As such, the Ban targets "particular views taken by speakers on a subject," and is subject to strict scrutiny. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

Fourth, strict scrutiny also applies because the Ban discriminates based on content and speaker. A law "that discriminate[s] against speech based on its content [is] presumptively invalid" and should be "subject to strict scrutiny." *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). Speaker-based restrictions are a type of content-based restriction that are subject to strict scrutiny because "[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010). For that reason, "speaker-based laws demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored

---

[30] LWV Decl. ¶¶ 7, 29; LWVCO Decl. ¶¶ 7, 36, 45, 58; LWVNJ Decl. ¶ 5; Charleston Decl. ¶¶ 5, 11; Saratoga Decl. ¶ 6; Milwaukee Decl. ¶¶ 6, 15.
[31] *See supra* note 30.

speakers have to say)." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 658 (1994). Applying strict scrutiny ensures that courts remain "deeply skeptical of laws that distinguish among different speakers, allowing speech by some but not others." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 777–78 (2018) (citation omitted). Such laws "run the risk that 'the State has left unburdened those speakers whose messages are in accord with its own views.'" *Id.* (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 580 (2011)).

The Voter Registration Ban discriminates based on speaker and content in a manner that triggers strict scrutiny. [32] On its face, the Ban prohibits certain disfavored speakers (civic engagement groups) from speaking about particular content (voter registration). Under now-current USCIS policies, non-disfavored speakers (state and local election officials) are still allowed to offer voter registration, and civic engagement groups are still allowed to participate at administrative naturalization ceremonies so long as their speech does not involve particular disfavored content—*i.e.*, providing voter registration assistance and discussing the importance of civic engagement.[33] The Constitution does not allow such disfavored treatment unless it is the least restrictive means to further a compelling governmental interest. *McCullen v. Coakley*, 573 U.S. 464, 478 (2014); *see also, e.g.*, *Brooklyn Branch of the NAACP v. Kosinski*, 657 F. Supp. 3d 504, 526–27 (S.D.N.Y. 2023) (finding a line warming prohibition is content-based because it "prohibits only a certain category of expression").

---

[32] The level of scrutiny that applies to speaker and content-based discrimination is forum-dependent. *See People for Ethical Treatment of Animals, Inc. v. Shore Transit*, 580 F. Supp. 3d 183, 194 (D. Md. 2022) (holding that certain restrictions on speech in nonpublic forums must be reasonable and viewpoint neutral).

[33] *See* USCIS Policy Manual, Vol. 12, Part J, Ch. 5, Sec. H (2025), noting that USCIS may permit "community-based organizations" to volunteer and participate in the ceremony, but not to conduct voter registration, *available at* https://www.uscis.gov/policy-manual/volume-12-part-j-chapter-5 (last visited Dec. 17, 2025).

### 3. The Ban Cannot Survive Strict Scrutiny.

The Ban cannot survive strict scrutiny because it is not necessary to serve a compelling state interest because there is no rational justification for it. *See Fusaro*, 930 F.3d at 248. Plaintiffs are unaware of any issue that has ever arisen from their assistance registering and speaking to voters at USCIS administrative ceremonies, and no such issues are identified in the Ban.[34] And Defendants have provided no reasoned justification for the Ban in their asserted APA "considerations." *See* Ban at 2–3, This failure to provide a justification is likely because one does not exist.

Even if the government had a permissible justification for enacting the Ban, it is not narrowly tailored to achieve any particular interest. A restriction on speech fails the narrow-tailoring requirement "[i]f a less restrictive alternative would serve the Government's purpose." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). To satisfy this inquiry, the regulation must not be "overinclusive." *Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625, 633 (4th Cir. 2016). The Ban is "unconstitutionally overinclusive" because it "'unnecessarily circumscrib[es] protected expression.'" *Id.* (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 775 (2002)).

The only government interests asserted in Defendants' APA "considerations" are "deploying limited agency resources while ensuring fair and impartial voter registration services." Ban at 3. But the government cannot demonstrate—and has not demonstrated—that the previous process in which groups attested to their nonpartisanship prior was insufficient or unduly burdensome such that Plaintiffs needed to be barred entirely from participating. Because the

---

[34] LWV Decl. ¶ 23; LWVCO Decl. ¶¶ 16, 29, 38, 47; LWVNJ Decl. ¶¶ 7, 11; Charleston Decl. ¶ 9; Saratoga Decl. ¶ 8; Milwaukee Decl. ¶ 12.

government does not have any reasoned justification for the Ban, and the Ban is not narrowly tailored in any event, it fails to satisfy strict scrutiny.

### 4. The Ban Cannot Survive Any Level of Scrutiny.

Even if the Court determines that strict scrutiny does not apply, the Ban cannot survive any level of scrutiny. Again, it is Plaintiffs' contention that strict scrutiny should apply because the Ban infringes on core political speech and is viewpoint discriminatory. *See supra* 21–23. Should the Court agree, a restriction like the Ban is invalid regardless of the nature of the forum where the government implements it. *See Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 392–93 (1993) (holding that restrictions on access to nonpublic fora must be "reasonable in light of the purpose served by the forum" and "viewpoint neutral") (citation omitted); *Buckley*, 525 U.S. at 207 ("When a State's election law directly regulates core political speech, we have always subjected the challenged restriction to strict scrutiny . . . .").

However, should the Court determine that the Ban does not infringe on Plaintiffs' core political speech and association and does not discriminate based on viewpoint, the applicable level of scrutiny depends on the type of forum in which the Ban applies.[35] The fact that such ceremonies are required by law to be public indicates that the Ban applies in public and designated public forums. *See* 8 U.S.C. § 1448(a) (requiring persons admitted to citizenship to take oath "in a *public*

---

[35] "Traditional public forums are those places which by long tradition or by government fiat have been devoted to assembly and debate, such as public streets and parks." *People for Ethical Treatment of Animals, Inc.*, 580 F. Supp. 3d at 191 (citation modified). "A designated public forum is created by government designation . . . for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Id.* at 190. As long as a designated public forum retains its "open character," it "is bound by the same standards as apply in a traditional public forum." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983). The nonpublic forum is a forum "which is not by tradition or designation a forum for public communication." *Id.*

The government's ability to limit speech in public and designated public forums is narrow. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 469–70 (2009) ("Government restrictions on speech in a 'designated public forum' are, subject to the same strict scrutiny as restrictions in a traditional public forum." (citation omitted)). Restrictions on speech in nonpublic forums must be reasonable and viewpoint neutral. *People for Ethical Treatment of Animals, Inc.*, 580 F. Supp. 3d at 194.

25

*ceremony*"); USCIS Policy Manual, Vol. 12, Part J, Ch. 4, Sec. A (2025) ("[a]n applicant *must* appear in person at a *public ceremony*") (emphasis added).

But to decide this case, the Court does need not decide whether USCIS administrative naturalization ceremonies—which take place in locations as varied as USCIS offices, national parks, public libraries, and public schools—are public forums, designated public forums, or nonpublic forums. Even if the Court determined that all USCIS naturalization ceremonies took place in nonpublic forums (an unlikely result given the statute requiring them to be public), the Voter Registration Ban would not still pass constitutional muster. Even in nonpublic forums, the government is only "permitted to restrict speech to the degree reasonably necessary to preserve the forum for its intended use." *Multimedia Publ'g Co. of South Carolina v. Greenville-Spartanburg Airport Dist.*, 991 F.2d 154, 162 (4th Cir. 1993). In restricting speech even in nonpublic forums, the government cannot rely on justifications that are "*post hoc*, pretextual creations, which were not shown to have been significantly threatened by the conduct banned." *Id.*

The League has had a long and successful history of offering voter registration at administrative naturalization ceremonies until USCIS's abrupt issuance of the Ban. As such, there is no basis for finding that allowing groups like the League to provide voter registration assistance undermines the primary purpose of the forum. The primary purpose of an administrative naturalization ceremony is, of course, to bestow upon new citizens all the rights, privileges, and responsibilities of citizenship. Indeed, Congress has mandated that, "[i]n order to promote the opportunities and responsibilities of United States citizenship," the agency charged with naturalization ceremonies "broadly distribute information concerning the benefits [of naturalization]" and "seek the assistance of appropriate community groups" in doing so. 8 U.S.C. § 1443(h). As such, voter registration assistance at the conclusion of the ceremony is entirely

consistent with the purpose of the forum.[36] *Multimedia Publ'g Co.*, 991 F.2d at 162. If USCIS actually had reason to believe that the existing process for approving nongovernmental groups to offer voter registration should be changed or adjusted, it could possibly do so. But what USCIS cannot do is simply issue an outright ban that, *at best*, "represents nothing more than the bureaucratic unwillingness to explore alternatives" that would not unreasonably burden Plaintiffs First Amendment rights. *Multimedia Publ'g Co.*, 991 F.2d at 162 (citation omitted).

Plaintiffs are thus substantially likely to succeed on their First Amendment challenge to the Ban.

## II.    Without a Preliminary Injunction or Stay, Plaintiffs Will Suffer Irreparable Harm.

Plaintiffs also satisfy the second element necessary for a preliminary injunction or stay because they will unquestionably suffer irreparable harm from USCIS's Voter Registration Ban absent relief from this Court. To establish irreparable harm, "the movant must make a clear showing that it will suffer harm that is neither remote nor speculative, but actual and imminent." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (citation modified). An injury is irreparable where it "cannot be fully rectified by the final judgment after trial." *Id.*

Where a plaintiff demonstrates a strong likelihood of success on a constitutional claim, irreparable harm is established. *See Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 287 (D. Md. 2025); *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 103 (4th Cir. 2022) (explaining that the prospect of "unconstitutional enforcement supplies the necessary irreparable injury") (citation omitted). Indeed, "[v]iolations of first amendment rights constitute

---

[36] Indeed, registering voters in the same room as the ceremony where they became citizens is a foolproof way to ensure that they are qualified voters.

per se irreparable injury." *Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir. 1978); *see also In re Murphy-Brown LLC*, 907 F.3d 788, 796 (4th Cir. 2018). Furthermore, mission-oriented organizations can establish a likelihood of irreparable harm where defendants' actions have perceptively impaired their primary missions. *See Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012); *Action NC v. Strach*, 216 F. Supp. 3d 597, 642 (M.D.N.C. 2016). This is true where "new obstacles" created by defendants' actions "unquestionably make it more difficult for the [plaintiff organizations] to accomplish their primary mission of registering voters." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

Again, Plaintiffs have established that USCIS's Voter Registration Ban infringes their First Amendment rights, and that it also violates the APA. Plaintiffs have clearly demonstrated that the Voter Registration Ban blocks their ability, and that of their members and volunteers, to communicate their view that assisting new Americans in registering to vote is an important civic responsibility.[37]

Moreover, Plaintiffs' work to reach, engage with, and assist new citizens in registering to vote at administrative naturalization ceremonies has been an important draw for League members and volunteers.[38] USCIS's Voter Registration Ban cuts off this avenue for participation and association, thereby burdening Plaintiffs' ability to attract, recruit, and retain members and volunteers. As Plaintiffs have established a likelihood of success on the merits of both their constitutional claims, the irreparable harm factor is *per se* satisfied. *See, e.g.*, *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021).

---

[37] LWV Decl. ¶¶ 5–6, 9, 12, 14, 25–29; LWVCO Decl. ¶¶ 7–8, 10, 13, 18, 23–24, 34–35, 37, 40–43, 49, 53–54, 58, 66; LWVNJ Decl. ¶¶ 3, 5, 7, 11; Milwaukee League Decl. ¶¶ 5, 15, 22; Charleston League Decl. ¶¶ 4–5, 7, 10–11; Saratoga League Decl. ¶¶ 5–6, 10–11, 14.
[38] LWV Decl. ¶ 29; LWVCO Decl. ¶¶ 10, 18, 26, 33, 49, 60, 69; LWVNJ Decl. ¶¶ 6, 17; Charleston Decl. ¶¶ 11–12; Saratoga Decl. ¶ 11; Milwaukee Decl. ¶ 15.

Second, beyond these *per se* irreparable constitutional injuries, Defendants' unlawful actions are already harming Plaintiffs' core organizational missions. USCIS's abrupt announcement of its Voter Registration Ban forced Leagues across the country to cancel numerous events and led to the involuntary squandering of significant volunteer and monetary resources.[39] The Ban further jeopardizes LWV's entire almost decade-long grant-funding program built around supporting state and local Leagues' work to register new citizens. *See* LWV Decl. ¶¶ 9–11; LWVNJ Decl. ¶ 16.

Because of the Voter Registration Ban, Plaintiffs have further been forced to expend significant time, effort, and resources attempting to devise alternative ways to reach newly naturalized Americans to assist them in registering to vote and otherwise promote their civic participation.[40] Even after significant expenditure of resources, however, Plaintiffs have not identified feasible alternatives that would allow them to reach and engage anywhere close to as many new citizens.[41] Being prohibited from attending and providing voter registration assistance and civic education at administrative naturalization ceremonies thus reduces drastically, where it is not stymied altogether, Plaintiffs' ability to reach new citizens to promote their civic participation and assist them in registering to vote.[42]

In myriad ways, the "new obstacles" inflicted by USCIS's Voter Registration Ban "unquestionably make it more difficult for the Leagues to accomplish their primary mission of registering voters"—a core part of which is to encourage, assist, and empower new citizens to

---

[39] *See* LWV Decl. ¶ 24; LWVCO Decl. ¶ 17; LWVNJ Decl. ¶ 14; Saratoga League Decl. ¶ 9; *see also* Charleston League Decl. ¶ 12.

[40] *See* LWV Decl. ¶ 27; LWVCO Decl. ¶¶ 9, 21, 31, 51, 62; LWVNJ Decl. ¶¶ 15–16; Milwaukee Decl. ¶ 21; Charleston Decl. ¶ 14; Saratoga Decl. ¶ 14.

[41] *See* LWV Decl. ¶ 28; LWVCO Decl. ¶¶ 19–21, 30–31, 37, 50–51, 58–59, 70; LWVNJ Decl. ¶¶ 15–16; Milwaukee League Decl. ¶¶ 17, 21–22; Charleston League Decl. ¶¶ 14–17; Saratoga League Decl. ¶¶ 13–14.

[42] *See* LWV Decl. ¶¶ 22, 28; LWVCO Decl. ¶¶ 22, 40, 52, 62, 70; LWVNJ Decl. ¶¶ 13, 15; Milwaukee League Decl. ¶¶ 13, 21, 22; Charleston League Decl. ¶¶ 7, 10, 16, 17; Saratoga League Decl. ¶¶ 10, 15.

participate in American democracy. *Newby*, 838 F.3d at 9.[43] Plaintiffs satisfy their burden to demonstrate irreparable harm sufficient for a preliminary injunction.

### III. The Balance of the Equities and Public Interest Favor Enjoining And Staying the Effective Date of the Voter Registration Ban.

Lastly, the balance of the equities and the public interest both favor issuance of a preliminary injunction. Defendants are "in no way harmed by issuance of a preliminary injunction which prevents [it] from enforcing restrictions likely to be found unconstitutional." *Leaders of a Beautiful Struggle*, 2 F.4th at 346 (citation omitted). Likewise, "'[t]here is generally no public interest in the perpetuation of unlawful agency action.'" *AFT v. Bessent*, 765 F. Supp. 3d 482, 505 (D. Md. 2025) (quoting *Newby*, 838 F.3d at 12).

### IV. No bond is necessary.

Federal Rule of Civil Procedure 65(c) contemplates "security" the Court can order to "pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).[44] But a district court may waive the bond requirement "where the enjoined or restrained party faces no likelihood of material harm." *Md. Dep't of Hum. Res. v. U.S. Dep't of Agric.*, 976 F.2d 1462, 1483 n.23 (4th Cir. 1992). Defendants will face no monetary injury from any relief ordered. As such, Court should exercise its discretion to waive or set at $0 the security requirement or, in the alternative to the extent the Court deems security necessary, Plaintiffs request a nominal bond of $100.

### CONCLUSION

For the reasons stated above, the Court should grant Plaintiffs' motion.

---

[43] *See* LWV Decl. ¶¶ 5, 9, 12; LWVCO Decl. ¶¶ 3, 6, 24, 36, 52, 65; LWVNJ Decl. ¶¶ 2, 3, 7; Milwaukee Decl. ¶ 5; Charleston Decl. ¶ 5; Saratoga Decl. ¶ 6.

[44] Should the Court issue a stay, there is no bond requirement for a stay issued under 5 U.S.C. § 705. *See, e.g.*, *Asylum Seeker Advoc. Project v. USCIS*, No. CV SAG-25-03299, 2025 WL 3029552, at *10 (D. Md. Oct. 30, 2025).

Dated: December 17, 2025                    Respectfully submitted,

*/s/ Bruce V. Spiva*
Bruce V. Spiva (D. MD. Bar No. 17523)
Danielle Lang*
Anna Baldwin*
Alexandra Copper*
Valencia Richardson*
Renata O'Donnell*
Rachel Appel*
Daniel Brophy*
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
bspiva@campaignlegalcenter.org
dlang@campaignlegalcenter.org
abaldwin@campaignlegalcenter.org
acopper@campaignlegalcenter.org
vrichardson@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
rappel@campaignlegalcenter.org
dbrophy@campaignlegalcenter.org

* Admitted *pro hac vice*

31

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2025, I filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system. I also certify that I have served copies of this filing by mail to all Defendants, as no counsel has yet entered an appearance on Defendants behalf.  Counsel for plaintiffs also emailed a courtesy copy of this filing to the Civil Chief of the U.S. Attorney's Office of the District of Maryland.

/s/     *Bruce V. Spiva*
Bruce V. Spiva